```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE SOUTHERN DISTRICT OF IOWA


IN RE:                          )
                                )      Chapter 7
PENNY RAE SWANSON,              )
                                )      Bankruptcy No. 07-03617
     Debtor.                    )
------------------------------  )
CHASE BANK USA, N.A.,           )
                                )      Adversary No. 08-30016
     Plaintiff,                 )
                                )
vs.                             )
                                )
PENNY RAE SWANSON,              )
                                )
     Defendant.                 )
```

## ORDER RE: COMPLAINT OBJECTING TO
## THE DISCHARGEABILITY OF A DEBT

This matter came before the undersigned for trial on September 30, 2008 on Plaintiff's Complaint. Plaintiff Chase Bank USA, N.A. was represented by attorney H. J. Dane. Attorney Steven R. Hahn represented Debtor Penny Rae Swanson. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF THE CASE

Chase Bank alleges that its claim is excepted from discharge pursuant to § 523(a)(2)(A) and (C). It asserts that Debtor purchased luxury goods within 90 days of filing her bankruptcy petition under § 523(a)(2)(C). Chase Bank also claims the debt is nondischargeable because Debtor made credit card charges intending to discharge the debt as opposed to repaying it. Debtor denies that the debt is nondischargeable.

### FINDINGS OF FACT

Debtor filed a Chapter 7 petition on October 23, 2007. Schedules I and J show that Debtor and her husband had joint monthly income of $1,991 and monthly expenses of $1,903. At the time of filing, Debtor had been employed with Hearth & Home for thirty-two years. She and her husband had joint annual income of $49,797 in 2005 and of $49,896 in 2006. Debtor's Schedule F

lists unsecured debt totaling $27,800.  The scheduled claim of
"Chase Cardmember Services" is $23,000.  The remainder of
Debtor's unsecured debt is largely credit card debt.  Chase Bank
seeks to except $15,364 from discharge in this adversary
proceeding.

   Chase Bank issued Debtor a credit card on October 14, 2006.
Over the first several statement periods, Debtor paid at least
the minimum amount due on the account.  Ex. 1 at 1-2.  She
carried very little, if any, balance on her account until May 9,
2007, when she made a cash advance of $5,000 which she deposited
into her personal checking account.  Ex. 7 at 1.  Debtor paid
daily household expenses with this checking account.  Id. at 2.
She made July, August and September 2007 minimum payments on her
Chase Bank account.  Ex. 1 at 33 - 45.  On August 22, Debtor made
payments totaling $695 to Financial Freedom Gulf for credit
counseling services.  Id. at 45.

   Beginning on September 1 and continuing for 18 days, Debtor
made daily purchases with her Chase Bank credit card.  Id.  On
September 13, Debtor paid attorney Steven Hahn to represent her
in her bankruptcy proceeding.  Id.  Debtor admits that she met
with Mr. Hahn prior to September 13 but does not remember the
date of their first meeting.  Debtor concedes that all Chase Bank
credit card charges she made after September 13 are not
dischargeable.

   Debtor contends that the charges made between September 1
and September 13 are dischargeable.  Debtor made forty-six
separate charges totaling $3,236.21 during that thirteen-day
period.  Ex. 1 at 3-4.  She made multiple charges almost every
day leading up to the date she paid her attorney to file her
Chapter 7 petition.  Id. at 2-4.  After meeting with Mr. Hahn,
Debtor continued to charge purchases on her Chase Bank credit
card almost daily.  Id. at 3-6.  The final balance on her Chase
Bank account was $15,465.22.  Ex. 1 at 6.  Her total credit line
was $20,200.  Id. at 53.

   Debtor made most of her purchases from home.  Ex. 1 at 2-4.
She shopped online at Amazon.com, by catalog with retailers such
as Newport News and Metrostyle, and through television shopping
networks, QVC and HSN.  Id.  Debtor has admitted that she may
have a problem with shopping.

   Although Debtor was unable to recall the exact items she
purchased, she was able to generally categorize the types of
goods.  She made seven purchases totaling $450 from Amazon for
books over a two-day period.  Ex. 1 at 2-4.  She made fourteen

charges from QVC totaling $325 and thirteen charges from HSN totaling $445 for household items, clothing or crafts in the first half of September. Id. During that same period, Debtor also spent $193.85 on shoes and $317.64 on beads for her crafts. Id. She further spent $819.19 on clothing which is not included in the amounts she spent at QVC or HSN. Id. She claims that some of these items were gifts for her daughter and grandchildren.

## CONCLUSIONS OF LAW

As one of the most important objectives of the bankruptcy code is the fresh start, exceptions to discharge should be construed broadly in favor of the debtor and narrowly against the creditor. In re Feddersen, 270 B.R. 733, 735 (Bankr. N.D. Iowa 2001). Congress created the fraud exception because it wanted to prevent abuse of bankruptcy remedies by debtors who had acted wrongfully. Cohen v. De La Cruz, 523 U.S. 213, 221-23 (1998). Plaintiff must prove the elements of the exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 283 (1991).

## LUXURY GOODS PRESUMPTION OF NONDISCHARGEABILITY

"[C]onsumer debts owed to a single creditor and aggregating more than $550 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief" are presumed to be nondischargeable. 11 U.S.C. § 523(a)(2)(C)(i)(I). Congress created this presumption to address the activity known as "loading up," in which a debtor goes on a buying spree in contemplation of bankruptcy with the expectation that any resultant debts will be discharged. In re Cron, 241 B.R. 1, 8 (Bankr. S.D. Iowa 1999) (citing S. Rep. No. 65, 98th Cong., 1st Sess. 58 (1985)).

The exception creates a rebuttable presumption that any debt incurred in the 90 days leading up to bankruptcy is nondischargeable. Cron, 241 B.R. at 8. The presumption "transforms the burden into one of proving the debt is dischargeable and places that burden squarely on the shoulders of the debtor." Id. at 9. If the presumption applies, the debtor's intent becomes the only relevant factor and it becomes the debtor's burden to prove the debt was not incurred in contemplation of bankruptcy. In re Ellingsworth, 212 B.R. 326, 340 (Bankr. W.D. Mo. 1997).

In order to invoke the presumption, the plaintiff must prove the debt is: (1) a consumer debt for luxury goods or services;

3

(2) of an individual; (3) owed to a single creditor; (4) totaling more than $550; and (4) incurred within 90 days before the order for relief.  See Feddersen, 270 B.R. at 736 (applying version of statute in effect prior to the 2005 BAPCPA amendments).

"Luxury goods" is not a defined term in the Code.  The Code does provide, however, that "[luxury goods] does not include goods or services reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor."  11 U.S.C. § 523(a)(2)(C).  The lack of clear definition and the subjectivity of the concept of "luxury" has created some difficulty in application.  In re McDonald, 129 B.R. 279, 283 (Bankr. M.D. Fla. 1991); In re Hall, 228 B.R. 483, 488-89 (Bankr. M.D. Ga. 1998).

When determining if a particular purchase falls within the definition of "luxury good," the circumstances surrounding the purchase are considered.  McDonald, 129 B.R. at 282-83.  The court may consider whether the purchase evidences fiscal irresponsibility.  Id. at 283.  An extravagant, indulgent, or nonessential purchase is generally considered a luxury.  Id.

Some goods that may otherwise be viewed as necessary can be considered luxury goods if the quality or quantity reach a certain level.  In re Herran, 66 B.R. 323, 324 (Bankr. S.D. Fla. 1986).  The court in Herran held that clothing, giftware and cosmetics were luxury goods when the debtor spent $1,021 on these items.  Id. at 323.  It found the debtor had demonstrated fiscal irresponsibility with these purchases.  Id. at 324.  It reasoned that while some purchases for this type of goods may be reasonable and necessary, the amounts the debtor spent were excessive.  Id.  "The standard for determining luxury goods under the statute implies that consideration be given to reasonableness in both quality and quantity."  Id.

While Chase Bank was unable to establish with specificity what items Debtor purchased, it was able to produce evidence of the nature of the goods purchased.  The items purchased were clothing, shoes, beads, books and household items.  The total charges for thirteen days of purchases was over $3,200.  While the exact items Debtor purchased at HSN, QVC and Newport News cannot be determined, the nature of the items is evidenced from the nature of the retailer.

Clothing, shoes and books can be necessities.  It is unreasonable, however, for a person in Debtor's financial situation to spend in excess of $1,000 on clothes and shoes, $450 on books and over $300 on beads in a thirteen-day period.

4

Debtor contends that some of these items were gifts for her daughter and grandchildren.  Although the Code provides that luxury goods are not items necessary for support of debtor or debtor's dependants, the evidence does not support a finding that Debtor's daughter or grandchildren are dependants.  Gift giving of this nature is excessive.  The fact that Debtor gave away some of the items she purchased is immaterial to a determination of dischargeability under § 523(a)(2)(C).

Debtor charged over $3,200 during a period of thirteen days immediately prior to paying her bankruptcy attorney.  She continued to make charges after that date, and now concedes the additional debt is nondischargeable.  Debtor has not proven that she intended to repay the charges and consequently has failed to overcome the presumption of nondischargeability.  Accordingly, Debtor's charges totaling $3,236.21 for "luxury goods" are excepted from discharge under § 523(a)(2)(C).

The purchases from Financial Freedom Gulf were not luxury goods.  Debtor was seeking assistance in handling her outstanding debt to try to make payments to her various creditors.  Chase Bank offers no evidence that these charges are for luxury goods and therefore no presumption of nondischargeability arises as to this amount.

Debtor suggests that she may have a shopping addiction which could bear on the outcome of this case.  In some cases, courts have considered addictions, such as gambling, when determining if a good is a luxury good or if the purchase was fraudulent.  Hall, 228 B.R. at 489; In re Stearns, 241 B.R. 611, 624 (Bankr. D. Minn. 1999).  In those cases, the debtor established that he or she had an addiction.  Hall, 228 B.R. at 489; Stearns, 241 B.R. at 624.  Here, Debtor has failed to present any substantive evidence of an addiction other then her statement that she may have a "problem" with shopping.  She has also failed to offer any evidence how this condition might have effected her state of mind or intent.  Debtor's suggestion that a compulsive disorder may play some role in this analysis is unpersuasive.

### CASH ADVANCE PRESUMPTION OF NONDISCHARGEABILITY

"[C]ash advances aggregating more than $825 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 70 days before the order for relief under this title, are presumed to be nondischargeable."  11 U.S.C. § 523(a)(2)(C)(i)(II).  Debtor filed her bankruptcy petition on October 23, 2007.  Therefore, the relevant 70-day period began on August 14, 2007.  Debtor

5

conceded that any amount incurred after she paid her attorney, Mr. Hahn, was excluded from the discharge.  Debtor received no cash advances between August 14 and September 13.  Therefore, the presumption of nondischargeability for cash advances does not apply in this case.

## ACTUAL FRAUD

A discharge does not discharge a debtor from any debt which was obtained by "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  Five elements must be satisfied before a debt is excepted from discharge under § 523(a)(2)(A): (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations, Field v. Mans, 516 U.S. 59, 72 (1995); and (5) the creditor sustained the alleged injury as a proximate result of the representations having been made.  In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987); In re Burghoff, 374 B.R. 672, 678 (Bankr. S.D. Iowa 2007).

Bankruptcy law provides that use of a credit card constitutes an implied representation of the cardholder's intent to repay the charges.  In re Meseck, 284 B.R. 901, 906 (Bankr. N.D. Iowa 2002).  "Once the law implies representation, the first three elements of the § 523(a)(2)(A) test interlock."  Id.  Hence, most credit card debt cases turn on whether the debtor intended to repay and whether the creditor justifiably relied.  Id.

A creditor may present evidence of surrounding circumstances from which intent may be inferred.  Grause, 245 B.R. at 99.  Courts examine several circumstances which can aid in proving intent, including:

> 1) the length of time between the charges made and the filing of the bankruptcy;
>
> 2) whether an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
>
> 3) the number of charges made;
>
> 4) the amount of the charges;
>
> 5) the financial condition of the debtor at the time the charges were made;

>    6) whether the charges were above the credit limit of the account;
>
>    7) whether the debtor made multiple charges on the same day;
>
>    8) whether or not the debtor was employed;
>
>    9) the debtor's prospects for employment;
>
>    10) the debtor's financial sophistication;
>
>    11) whether there was a sudden change in the debtor's buying habits; and
>
>    12) whether the purchases were made for luxuries or necessities.

Grause, 245 B.R. at 99.  The second element is sometimes modified to consider the length of time between the charges and contacting a bankruptcy attorney.  In re Macias, 324 B.R. 181, 188 (Bankr. E.D.N.Y. 2004).  Some courts group these twelve factors into four major categories: (1) the timing; (2) the frequency and amount; (3) the nature; and (4) the debtor's situation at the time of the charges at issue.  Id.

While these factors are helpful in a determination of intent, the question remains one of credibility.  Stearns, 241 B.R. at 626.  A court should examine the totality of the circumstances surrounding the charges and not base a determination of intent solely on a tally of factors.  Id.  A court must determine whether it is more likely than not that the debtor had the requisite fraudulent intent after weighing all of the evidence.  Grause, 245 B.R. at 102.

Once a plaintiff proves intent, it must then demonstrate that its reliance on the debtor's representation was justifiable.  See Grause, 245 B.R. at 102 (finding no reliance); Macias, 324 B.R. at 192 (finding justifiable reasonable).  A creditor "is required to use its senses, and cannot recover if it blindly relies upon a misrepresentation the falsity of which would be patent to it if it had utilized its opportunity to make a cursory examination."  Field v. Mans, 516 U.S. at 71.  When determining if reliance is justifiable, the court must ask whether the creditor had reason to believe the debtor would not carry out its representation of intent to pay.  Macias, 324 B.R. at 192.

7

> [I]f at the time the charges at issue were incurred, the debtor maintained a balance within his or her credit limits and made the payments required under the credit agreement, that would show an absence of "red flags" and lend support to an inference that the creditor justifiably relied on the debtor's false representations as to his or her intent to repay.

Id.

Finally, before a court can declare a debt nondischargeable under § 523(a)(2)(A) it must find that the creditor sustained a loss as a proximate consequence of the false representation. Id. If the creditor will not be repaid an amount which it has lent to a debtor, it has satisfied this element. Id.

Debtor used her credit card forty-six times and spent $3,236.21 in thirteen days. She met with her bankruptcy attorney prior to September 13, but does not remember the date of their first meeting. She concedes that the substantial charges she incurred after she paid her attorney are nondischargeable but contests the dischargeability of the charges made in the thirteen days prior to paying Mr. Hahn. Examining the facts of this case in light of the factors identified in Grause, this Court concludes that when Debtor made the credit card charges she did not intend to repay them.

The timing of the charges weighs heavily in favor of a finding that Debtor did not intend to repay. It is unclear exactly when Debtor first met with Mr. Hahn. In the two weeks leading up to, and several weeks following paying him, Debtor incurred substantial charges. She concedes that the charges incurred after she met with Mr. Hahn are nondischargeable. It is fair to conclude that Debtor knew she would be filing bankruptcy prior to meeting with her attorney. Further, the thirteen days of charges were within two months of actually filing her bankruptcy petition, indicating that Debtor intended her debts would be discharged.

The frequency and amount of the charges establish that Debtor possessed fraudulent intent. Debtor made forty-six charges in a period of thirteen days, with purchases every day and multiple charges on ten of the thirteen days. Almost all of the charges were for amounts less than $100. Over that short period, however, Debtor charged $3,236.21. The number and the amount of charges as well as the fact that there were multiple charges on many days indicates Debtor possessed the requisite fraudulent intent.

Debtor's spending habits changed in September 2007. Debtor's usage of her Chase Bank credit card went from a few charges a month and low balances to several charges each day. Although no evidence was presented on her buying habits on other credit cards, the relatively low balances on those other cards indicates they were not used as frequently as Debtor's Chase Bank card in the month of September. The evidence that Debtor's card usage increased dramatically a short time prior to filing her bankruptcy petition supports a finding that she did not intend to repay the charges.

As already stated, most of the purchases which Debtor made during this period were luxury goods. This is additional support for a conclusion that Debtor intended to discharge these amounts and not pay them.

The final area to consider is Debtor's overall situation at the time of the charges. Debtor was employed when she made these purchases. She had been employed with the same company for thirty-two years. Although her income had decreased slightly in the past few years, there is no evidence questioning her continued employment. Debtor never exceeded her credit limit on this account, even with the charges which she concedes are not dischargeable. Debtor's employment and ability to stay within her credit limit are factors which mitigate against a showing of intent to defraud Chase Bank.

Debtor's financial condition is less clear. Schedules I and J show Debtor had a net monthly income of $88. This amount does not include monthly payments on unsecured debt. The monthly payments on her credit card accounts would easily consume the $88 of net monthly income. Debtor's financial condition weighs in favor of a conclusion of fraudulent intent.

Debtor consulted with Financial Freedom Gulf prior to incurring over $10,000 in charges. The fact that she met with Financial Freedom Gulf establishes that she understood she was having financial difficulty prior to charging a significant sum on her Chase Bank card. Although this does not easily fit within the <u>Grouse</u> factors, it is relevant under the totality of the circumstances test. Obtaining financial counseling shows that she was aware that she was having difficulty handling her budget. However, even recognizing financial problems, she used her credit card to charge an additional $10,000.

Evaluating the totality of the circumstances in light of the articulated factors, this Court concludes that Debtor did not intend to repay the charges at the time she made them. Chase

Bank has proven the requisite fraudulent intent under
§ 523(a)(2)(A).

Next, the Court must determine whether Chase Bank's reliance was justifiable. Debtor's account was well below the credit limit. She had made timely minimum payments prior to September 1, 2007. Debtor's payment history and low balance in proportion to the credit limit demonstrates an absence of "red flags" which would put Chase Bank on notice that there was reason to question Debtor's representations. Without these "red flags," and with no other indication that there was reason to question Debtor's ability to pay, Chase Bank's reliance was justifiable.

It is quite clear that Chase Bank sustained a loss as a proximate cause of Debtor's representations. Debtor incurred more than $3,000 in charges which Chase Bank will be unable to collect if this sum is not excepted from Debtor's discharge. Chase Bank has met its burden on all of the elements of § 523(a)(2)(A). The sum of $3,236.21 is therefore excepted from discharge.

Although the court finds that the charges made between September 1 and September 13 were fraudulently incurred, it finds that amounts due prior to that date are not excepted from discharge. The only relevant charges prior to September 1 were the $5,000 cash advance in May 2007 and the $695 payment to Financial Freedom Gulf. At the time she made the cash advance, she had a $5 credit on her Chase Bank credit card account. This is the only charge Debtor made on this account between May and the end of August. It occurred three months prior to paying her bankruptcy attorney and four months prior to filing her bankruptcy petition. She continued to make minimum payments on the account. The totality of the circumstances do not establish that at the time Debtor made this cash advance, she did not intend to repay it. Accordingly, the amount of $5,000 is dischargeable.

The $695 payment to Financial Freedom Gulf is likewise dischargeable. In the circumstances, the Court cannot conclude that Debtor charged this amount with the intent of not repaying it in order to receive counseling on how to repay her debts. This amount is not excepted from the discharge.

**SUMMARY**

Chase Bank has established by a preponderance of evidence that Debtor, within ninety days of filing her bankruptcy petition, purchased luxury goods with a total value over $550.

This has created a presumption of fraud under § 523(a)(2)(C) which Debtor has failed to rebut. Chase Bank has failed to show that there were any cash advances within 70 days of the order for relief which are not conceded by Debtor to be nondischargeable.

Chase Bank has established that Debtor acted fraudulently in making charges on her credit card account between September 1 and September 13. She misrepresented her intent to pay these charges and Chase Bank justifiably relied on those representations. The Court finds that $3,236.21 is nondischargeable. Debtor has conceded that all charges incurred on her Chase Bank account after she paid Mr. Hahn are likewise nondischargeable in the amount of $6,519.54.

Chase Bank has failed to establish that Debtor acted fraudulently when she used a cash advance to transfer $5,000 into her checking account or charged $695 with Financial Freedom Gulf. Therefore, $5,608.25 is determined to be dischargeable. This amount includes the cash advance and related finance charges, as well as the Financial Freedom Gulf charges on August 22, less payments Debtor made.

**WHEREFORE**, Plaintiff's Complaint Objecting to Dischargeability of a Debt is GRANTED IN PART AND DENIED IN PART.

**FURTHER**, $9,755.75 owing to Plaintiff Chase Bank USA, N.A. is excepted from discharge.

**FURTHER**, the remaining $5,608.25 is determined to be dischargeable.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:  November 13, 2008

_____
Paul J. Kilburg
Chief Bankruptcy Judge

39/1

11